AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

United States of America )
v. )
Lajuana Ann KELLEY ) Case No. 0:24.mj.187
)
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  December 7, 2023  in the county of  Franklin  in the  Southern  District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 1512 (c)(2) | Obstructing, Influencing, and Impeding an Official Proceeding |

This criminal complaint is based on these facts:

See attached affidavit, which is incorporated by reference.

☑ Continued on the attached sheet.

*Complainant's signature*

Alexa Montesano, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence. +Affirmed
VIA FACETIME

Date: MARCH 7, 2024

*Judge's signature*

City and state:  Columbus, Ohio   Norah McCann King, U.S. Magistrate Judge
*Printed name and title*

## INTRODUCTION

I, Alexa Montesano, (hereafter referred to as affiant) been duly sworn depose and state:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), assigned to the Detroit Field Division, Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 United States Code, Section 2516(1). During this time, your affiant has accumulated the following training and experience:

2. I graduated from the DEA Academy located in Quantico, Virginia in 2021. I received approximately 16 weeks of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, and money laundering investigations.

3. As a DEA agent, I have participated in the execution of numerous search warrants at residences and businesses of narcotics traffickers, safe houses, crack houses, and have participated in numerous search warrants and investigations for drug related offenses.

4. As a DEA agent, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, fentanyl, and its analogues, methamphetamine and other controlled substances as defined in 21 U.S.C. § 801. I know that these are controlled substances under 21 U.S.C. § 801.

5. During the course of my law enforcement career, I have had experience in debriefing defendants, interviewing participating witnesses, cooperating individuals, and other persons who have personal knowledge and experience regarding the amassing, spending, conversion, transportation, distribution and concealment of records and proceeds of trafficking in controlled substances.

6. Before joining DEA, I was a police officer for approximately two years, during the course of my law enforcement career, I have had experiences with narcotics investigations.

7. The facts and information contained herein are based on my personal knowledge and experience, that of other law enforcement personnel, surveillance operations, and from persons with knowledge regarding relevant facts and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this investigation.

## PROBABLE CAUSE

8. In October of 2022, members of the DEA Columbus District Office (hereinafter, referred to as, "CDO") established an investigation into the Charles ALLEN (hereinafter referred to as, "ALLEN") Drug Trafficking Organization. During the course of the investigation to date, investigators from the CDO have identified ALLEN to be distributing large amounts of fentanyl and cocaine in the Columbus, Ohio, area. Investigators have interviewed a confidential source (hereinafter referred to as, "CS"), who confirmed ALLEN to be a fentanyl and cocaine distributor in Columbus, Ohio. Information provided by the CS has been corroborated by your affiant, and/or other investigators assigned to the case. This corroboration was achieved through various investigative techniques to include but not limited to, administrative subpoenas, tracker warrants, geo-location warrants, and controlled purchases of narcotics.

9. Throughout the course of this investigation, investigators from the CDO completed three controlled purchases from ALLEN resulting in the seizure of approximately 310 gross grams of fentanyl and approximately 240 gross grams of cocaine all within 1,000 feet of a school zone.

10. In July of 2023, investigators from the CDO applied for and obtained two federal search warrants for 1507 and 1506 Arlington Avenue, Columbus, Ohio, 43211, which are residences associated with ALLEN, in the Southern District of Ohio by United States Magistrate Judge Kimberly A. Jolson.

11. On or about July 20, 2024, members of the Franklin County Sherriff's Office (hereinafter referred to as, "FCSO") Special Weapons and Tactics (hereinafter referred to as, "SWAT") executed the federal search warrant at 1507 Arlington Avenue. Prior to the execution of the warrant, investigators from the CDO completed and sent FCSO SWAT, via e-mail, a SWAT threat assessment form, a SWAT scout request form, and a photograph of ALLEN. In the body of the scout request form, details about the controlled purchases were provided.

12. On or about November 30, 2023, investigators from the CDO applied for and obtained a federal complaint and arrest warrant for ALLEN in the Southern District of Ohio by United States Magistrate Judge Elizabeth Preston Deavers. On the same day, investigators from the CDO provided, via email, FCSO SWAT a copy of the criminal complaint and arrest warrant to delegate apprehension responsibility to the FCSO SWAT for a period of seven days. In the body of the email, investigators from the CDO provided FSCO SWAT with a SWAT threat assessment, SWAT scout request form, a photograph of ALLEN, residences associated with ALLEN, and ALLEN's mother's and girlfriend's address. In the body of the scout request form, details about the controlled purchases were provided.

13. On or about December 8, 2023, ALLEN's attorney contacted, via telephone, Assistant United States Attorney Michael Hunter to coordinate ALLEN's self surrender on his federal arrest warrant. Prior to December 8, 2023, ALLEN would not have the access to verify a federal arrest warrant in the Southern District of Ohio. The Southern District of Ohio uses a national system, Public Access to Court Electronic Records (hereinafter referred to as, "PACER"), which is typically used by law enforcement or Attorneys. The general public can request an account on PACER for a fee however, investigators from the CDO have not found any evidence that ALLEN has access to PACER without going through an Attorney.

14. On or about December 12, 2023, ALLEN failed to appear for self-surrender. Due to ALLEN's failure to self-surrender, investigators from the CDO delegated apprehension responsibility to the Southern District of Ohio United States Marshals Service. On the same date, the United States Marshals Service placed the federal arrest warrant in to the National Crime Information Center (hereinafter referred to as, "NCIC"). Prior to the federal arrest warrant being received and entered into NCIC by the United States Marshals Service, local law enforcement or attorney's would have not known that a federal arrest warrant was active for ALLEN's arrest unless checking and/or having access to PACER.

15. On or about January 17, 2024, ALLEN was arrested on the federal arrest warrant by the Delaware County Drug Task Force at 707 Fern Drive, Delaware, Ohio, 43015. ALLEN evaded law enforcement for approximately 48 days before being apprehended.

16. On or about February 18, 2024, a source of information (hereinafter referred to as, "SOI") contacted investigators from the CDO about photographs of a file that were being sent around in reference to "Fat Ant", who investigators know as ALLEN. The SOI stated that he/she

believed the pictures were being sent from Lajuana Ann **KELLEY** (hereinafter referred to as, "**KELLEY**") who he/she believed was employed at a cleaning company for an attorney's office but did not know **KELLEY**'s reasoning for doing so. The SOI provided investigators from the CDO with a copy of the photographs. At that time, investigators were able to determine that the file was not a file from an attorney's office, but was a target file for ALLEN that investigators sent to the FCSO SWAT throughout the course of their investigation.

17. On the same date, investigators from the CDO sent the photographs and contacted FCSO SWAT in order to positively identify the file and to inquire if **KELLEY** was possibly an employee of the Franklin County Public Facility Management that cleans the FCSO SWAT facility. FCSO SWAT confirmed that the file was theirs and that **KELLEY** was an employee and had access to the SWAT building. At that time, the investigation was turned over to the FCSO Special Investigations Unit (hereinafter referred to as, "SIU").

18. On or about February 20, 2024, investigators from the FCSO SIU applied for and obtained a State of Ohio search warrant to extract digital data from **KELLEY**'s cellular device in preparation of the interview.

19. On or about February 21, 2024, investigators from the FCSO SIU conducted a voluntary interview with **KELLEY** at the FCSO SWAT facility located at 900 North Hague, Columbus, Ohio, 43204. Before the interview started, investigators from the FCSO SIU explained to **KELLEY** that she was not under arrest and was free to leave at any time. During the interview, **KELLEY** stated that while cleaning the FCSO SWAT facility, recognized a photograph of her cousin "Ant", who investigators know as ALLEN, laying on top of a file located on a FCSO Deputy's desk. **KELLEY** stated that she took a photograph of what she believed to be ALLEN's mugshot and sent the photograph to ALLEN's girlfriend, Alexis. **KELLEY** stated that she did not send the photograph to ALLEN directly but later stated that she knew that Alexis shared the photograph with ALLEN. **KELLEY** also stated that her and Alexis went back and forth, via telephone, talking about the details of ALLEN's case after sending the photograph. During the interview, investigators from the FCSO SIU made **KELLEY** aware that she took photographs of a target file and at that time of her taking the photographs, ALLEN had a warrant out for his arrest. Throughout the course of the interview, **KELLEY** confirmed that she saw ALLEN's name referenced on a file, saw a photograph of **ALLEN** attached to an email that was provided to FCSO SWAT from law enforcement, and provided the information to Alexis to be shared with ALLEN.

4

20. During the interview, **KELLEY** provided investigators from the FCSO SIU with verbal consent and the passcode to her Apple I-Phone 13. While looking through **KELLEY**'s I-Phone, investigators from the FCSO SIU observed a text string dated December 7, 2023, between **KELLEY** and Alexis who was saved under the contact name "Lexie Liu". Investigators from the FCSO SIU observed one photograph, which was a photograph of the above referenced email that was sent from investigators from the CDO to FCSO SWAT, with the following text string:

| | |
|---|---|
| Alexis: | Wtf I was just there last night. |
| **KELLEY**: | You better be careful and you didn't hear this shit from me. |
| Alexis: | Where did you see it? |
| **KELLEY**: | That doesn't matter just delete it never mind. |
| Alexis: | Ok I deleted it. |
| **KELLEY**: | Thanks. |

21. Upon reading the conversation, investigators from the FCSO SIU asked **KELLEY** why she wanted Alexis to delete the photograph in which **KELLEY** stated that she should have never had the information and should have never had the photographs in her phone. Investigators from the FCSO SIU concluded the interview, seized **KELLEY**'s Apple I-Phone 13, and **KELLEY** left 900 North Hague without incident.

22. Below are the photographs located in **KELLEY**'s Apple I-Phone 13 after examining the digital data extracted from the State of Ohio search warrant:

- Email provided to FCSO SWAT by investigators from the CDO reading, "The above information is what we sent you before on ALLEN. I attached ALLEN's warrant. Remember this warrant will not be in NCIC until after the 7th day that the warrant was signed, per DEA policy. Then we have to transfer the warrant to the Marshals. The Marshals will enter the warrant into NCIC and the warrant is now the Marshals responsibility. We can coordinate with the Marshals if you guys want to continue to pursue him. Below is more intel on ALLEN". The body of the email also included a photograph of ALLEN, ALLEN's residences, ALLEN's mother and girlfriend's residences.

5

- Two pages of a FCSO SWAT Scout Request Form (with ALLEN's information and case details).
- FCSO SWAT Threat Assessment (with ALLEN's information and case details).
- Two copies of a United States District Court Criminal Complaint for ALLEN.
- Two copies of two pages of a United States District Court Arrest Warrant for ALLEN.
- Yellow folder with hand-written noted pertaining to ALLEN's locations and the locations that were checked.
- Yellow folder with hand-written notes with the name "Fat Ant" on the top of the folder.

23. Upon review of the digital data extracted from **KELLEY**'s Apple I-Phone 13, investigators from the FCSO SIU determined that **KELLEY** sent a photograph of the email with a circle drawn around 1506 Arlington Avenue and a black line drawn horizontally directly beneath 1506 Arlington Avenue which appeared to be blacking out some of the details within the body of the email, to Alexis on December 7, 2023. Based on the aforementioned facts and the digital time stamps on the photographs found in **KELLEY**'s photographs, investigators from the FCSO SIU believe that after December 7, 2023, **KELLEY** took additional photographs of the content within ALLEN's file. Investigators from the FCSO SIU believe this due to observing a photograph of the same email, which was originally sent to Alexis, however, this particular photograph of the email was digitally time stamped on December 8, 2024, and did not display a circle over 1506 Arlington Avenue nor a black line drawn horizontally and provided more details within the body of the email than the previous photograph. Although during the interview, **KELLEY** did not admit to knowing that ALLEN had a federal warrant out for his arrest, **KELLEY** had photographs located in her Apple I-Phone 13 and sent out to multiple individuals, via text message, a copy of the United States District Court arrest warrant for ALLEN which displayed the date of November 30, 2023.

24. Based on investigators training, experience, and knowledge of the case, investigators from the CDO believe that when **KELLEY** took and sent the photographs of

ALLEN's file, it alerted him that he had a federal arrest warrant out for his arrest which allowed him to evade law enforcement for approximately 48 days.

25. Based on my training, experience, and my review of the evidence gathered by investigators assigned to this investigation, there is probable cause to believe that Lajuana Ann **KELLEY** has violated 18 U.S.C 1512(c)(2), Obstructing, Influencing, and Impeding an Official Proceeding.

Alexa Montesano
Drug Enforcement Administration
Special Agent

SUBSCRIBED and SWORN to before me this 7th day of March, 2024. Time: 3:03 pm.

VIA FACETIME

Honorable Norah McCann King
United States Magistrate Judge
Southern District of Ohio

7